**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| GEORGIANNA I. PARISI, | : | Case No. 3:20-cv-00051 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I. INTRODUCTION

Plaintiff Georgianna I. Parisi filed an application for Disability Insurance Benefits and for a period of disability benefits in September 2016. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Laura S. Twilley concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action, and now seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), Plaintiff's Reply (Doc. No. 14) and the administrative record (Doc. No. 6).

## II. BACKGROUND

Plaintiff initially asserted that she has been under a disability since August 1, 2015. However, she amended her disability claim to a closed period of disability beginning on January 1, 2014 and ending on December 31, 2016. On the date last insured, Plaintiff was sixty-three years old. Accordingly, Plaintiff was considered a "person of advanced age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(e). She has a law degree.

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 6-2, PageID 136-47), Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 12), and Plaintiff's Reply (Doc. No. 14). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant

paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §423 (d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.  THE ALJ'S DECISION

As noted previously, it fell to the Administrative Law Judge to evaluate the evidence connected to Plaintiff's application for benefits.  In doing so, she considered each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  She reached the following main conclusions:

> Step 1:  Plaintiff did not engage in substantial gainful activity from January 1, 2014 through December 31, 2016.
>
> Step 2:  Plaintiff had the severe impairments of Major Depressive Disorder and Autism Spectrum Disorder during the closed period of benefits.
>
> Step 3:  She did not have an impairment or combination of impairments that or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4:  Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "full range of work at all exertional levels," subject to the following nonexertional limitations: (1) should not climb ladders, ropes, or scaffolds, (2) should not do work involving any exposure to unprotected heights or dangerous moving machinery, (3) work should not involve production rate work or strict production quotas, (4) can occasionally interact with coworkers, supervisors, and the general public, and (5) requires advance notice of major changes in work processes.
>
> Step 4:  Plaintiff could perform her past relevant work as a paralegal.
>
> Step 5:  Plaintiff could also perform a significant number of jobs that exist in the national economy.

(Doc. No. 6-2, PageID 139-47).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 147.

4

## V. DISCUSSION

Plaintiff challenges several aspects of the non-disability decision. She alleges that error occurred at Step Three in assessing her functional limitations as well as evaluating her severe impairments under the Listings. For the reasons set forth below, this Court finds that error occurred at Step Three. Therefore, the undersigned declines to address Plaintiff's remaining arguments as to the medical opinion evidence, the vocational expert's testimony, and the Appeals Council's refusal to remand based on additional evidence.

### I. The Listings and Functioning Limitations

At the onset, Plaintiff contends that error was committed at Step Three. She takes issue with the consideration of Listings § 12.02 and § 12.10, and the failure to consider other relevant Listings § 12.04 and § 12.15. Plaintiff also criticizes the assessment of her functional limitations under Paragraph B of Mental Disorders.

At Step Three, the ALJ must determine whether the claimant has an impairment that meets or medically equals one of the listed impairments in Appendix 1, Subpart P (the "Listings"). 20 C.F.R. 404.1520(a)(4)(iii). The Listings describe impairments that are considered by the Social Security Administration to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Indeed, "neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). However, the ALJ should discuss each relevant listing "where the record raises a

'substantial question as to whether [the claimant] could qualify as disabled under [such] listing." *Id.* (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). The claimant has the burden at this step to establish that she meets or equals a listed impairment. *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 536 (6th Cir. 2002).

The evaluation of Plaintiff's impairments under § 12.02 and § 12.10 resulted in the finding that: "The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.02 and 12.10." Doc. No. 6-2, PageID 141). In reaching this conclusion, the ALJ determined that Plaintiff's mental impairments did not meet the criteria set forth in Paragraphs B and C. *Id.* at 142.

### A. Listings § 12.02 and § 12.04

The parties agree that § 12.02 should not have been considered in the present case. Plaintiff indicates that she "never presented any evidence that she suffered" from conditions that fall under this listing, and the Commissioner states that this listing is "not relevant to this case and the ALJ's reference to it appears to be a typographical error." (Doc. No. 12, PageID 865).

There is limited agreement as to § 12.04. Plaintiff maintains that her severe impairment of Major Depressive Disorder should have been considered under this listing, and the failure to do so was in error. As to § 12.04, the Commissioner "acknowledges that the ALJ did not discuss [this listing] and that the evidence raised a 'substantial question' as to whether Plaintiff could satisfy the listings." *Id.* (citing *Smith-Johnson*, 579 F. App'x at 432). Yet, this is omission is allegedly harmless error because, as the Commissioner maintains, the decision is supported by substantial evidence since the ALJ "analyzed

6

whether Plaintiff satisfied paragraphs B and C of listings 12.02 and 12.10," which are supposedly "identical to paragraphs B and C of listing 12.04." *Id.*

As a threshold matter, the Commissioner is correct in recognizing that the criteria under Paragraphs B and C of § 12.02 are identical to the criteria under Paragraphs B and C of § 12.04. 20 C.F.R. Part 404, Subpart P, Appendix 1. However, the same is not true for the criteria under § 12.10. Under § 12.10, there are only Paragraph A and B criteria. Therefore, while the criteria under Paragraph B of § 12.10 are identical to the criteria under Paragraph B of § 12.04, there are no comparable criteria under Paragraph C.

To meet or medically equal § 12.04 (depressive, bipolar and related disorders), the claimant must satisfy the criteria under either Paragraphs A and B or Paragraphs A and C. In the present case, the Commissioner does not contest the criteria under Paragraph A given that Plaintiff's Major Depressive Disorder was identified as a severe impairment.[2] Therefore, this Court will evaluate whether the assessment as to the Paragraph B and C criteria under § 12.04 is supported by substantial evidence.

   1. **Paragraph B**

Paragraph B of § 12.04 requires an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

---

[2] Under Paragraph A, the claimant must show medical documentation of depressive disorder, which is characterized by five or more of the following: (a) depressed mood; (b), diminished interest in almost all activities; (c) appetite disturbance with change in weight; (d) sleep disturbance, (e) observable psychomotor agitation or retardation; (f) decreased energy; (g) feelings of guilt or worthlessness; (h) difficulty concentrating or thinking; or (i) thoughts of death or suicide. 20 C.F.R. Part 404, Subpart P, Appendix 1.

7

> 1. Understand, remember or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4)."

20 C.F.R. Part 404, Subpart P, Appendix 1.  As to these criteria, the ALJ determined that Plaintiff had a (1) mild limitation in understanding, remembering, or applying information, (2) moderate limitation in interacting with others, (3) mild limitation in concentrating, persisting, or maintaining pace, and (4) moderate limitation in adapting or managing oneself.  (Doc. No. 6-2. PageID 141).  Plaintiff asserts that evidence of record supports a finding of marked limitations in all four areas.  (Doc. No. 9, PageID 841-46).

Looking first to the area of understanding, remembering, or applying information, the ALJ relied on the fact that Plaintiff "has a post-graduate degree in law and testified that she can read, write, and do basic math without difficulty."  (Doc. No. 6-2, PageID 141).  He further observed that Plaintiff "returned to skilled work as a paralegal," and that "objective mental status examinations during the relevant period consistently showed normal memory, orientation, intelligence, and organization."  *Id.*

Plaintiff claims that the evidence cited as to this area of mental functioning was "cherry-picked" and was not representative of the evidence as a whole.  The undersigned disagrees.  Records reflect that Plaintiff presented with normal memory and that her "fund of the [*sic*] knowledge also seemed appropriate for educational status."  (Doc. No. 6-7, PageID 749).  Mental status examinations while Plaintiff was hospitalized reflect that Plaintiff's thought process was "linear, logical, and goal directed," her thoughts, behaviors, and speech were all organized, her memory was adequate and intelligence "estimated at

8

average." *Id.* at 704, 716, 720, 724, 727, 731, 736. Plaintiff's psychiatrist, Dr. Katherine A. Hott, observed on mental status examination that Plaintiff's memory was "intact" and that her thought processes were usually "organized." *Id.* at 760, 769, 772. She also observed that Plaintiff had "logical thinking" and was "very intelligent, but superficial." *Id.* at 772. On two occasions, Plaintiff's thought processes were "circumstantial." *Id.* at 763, 766. It does not appear that the ALJ "cherry picked" the evidence related to this area of mental functioning. Instead the record reflects that the ALJ's assessment as to the area of understand, remember, or apply information is supported by substantial evidence.

The assessment of a moderate limitation in interacting with others is also supported by substantial evidence. As to this area of mental functioning, the ALJ observed that Plaintiff's "objective mental status examinations noted disheveled appearance, shallow or superficial conversational content, and restricted affect." (Doc. No. 6-2, PageID 141). She also recognized Plaintiff's diagnosis of Autism spectrum disorder, and other examination notes that reflect "lively appearance, articulate voice, cooperative behavior, full affective range, normal speech and tone, and adequate grooming and hygiene." *Id.*

Hospitalization records reflect that on exam Plaintiff had "limited eye contact" and was "extremely superficial and guarded." (Doc. No. 6-7, PageID 704, 716). However, she was regularly observed as "cooperative." *Id.* at 708, 711, 713, 714, 718, 722, 725, 729, 733. Plaintiff was also "interactive with others" and "very pleasant on exam." *Id.* at 713, 719. As her stay progressed, her eye contact had "improved." *Id.* at 724, 727, 731. Dr. Hott also observed that Plaintiff was "cooperative" with "fair" eye contact. *Id.* at 760, 763, 766, 769, 772. She was also "calm and casual" on one occasion. *Id.* at 772.

9

Plaintiff takes issue with the fact that the ALJ did not discuss the observations of David Ward Tilton, LISW—namely, his observations that Plaintiff "had sustained serious, and regular outbursts of anger and meltdowns, and, as a result, has been isolated from both professional colleagues and friends." (Doc. No. 9, PageID 844). While Mr. Tilton made observations as to Plaintiff's ability to interact with others, such observations are recitations of Plaintiff's subjective complaints. As to this area of mental functioning, Mr. Tilton wrote that Plaintiff reported that "she continued having difficulty interacting with other people." (Doc. No. 6-2, PageID 56). He also wrote that Plaintiff "reported she was still very angry, and she described several times to me situations in which she 'blew up' because things were not going as she wanted." *Id.* Lastly, he indicated that "she shared with me her anger, her outbursts…her isolation from former colleagues…" (Doc. No. 6-6, PageID 663).

Based on the fact that Mr. Tilton's observations as to Plaintiff's ability to interact with others were primarily based on her subjective reports, it was reasonable for the ALJ to instead focus on the objective medical evidence derived from mental status examinations and treatment records. *See generally Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("[S]ubstantial evidence supports the ALJ's determination that the [treating source opinion] was not entitled to deference because it was based on [the claimant's] subjective complaints, rather than objective medical data"). The assessment of a moderate limitation in Plaintiff's ability to interact with others is supported by substantial evidence.

Next, as to Plaintiff's ability to concentrate, persist or maintain pace, the ALJ noted that Plaintiff "testified that she struggles with concentrating for a long period." (Doc. No. 6-2, PageID 141). However, she said that the "objective mental status examinations during

10

the relevant period showed only mildly reduced attention or concentration," and that in June 2016, Plaintiff's "attention and concentration were observed to be good." *Id.*

A review of the record demonstrates that the ALJ's conclusion that Plaintiff has a mild limitation in this area is supported by substantial evidence. Dr. Hott observed that Plaintiff's attention was "good" on three occasions, and that Plaintiff had a "mild reduction" in attention on two occasions. (Doc. No. 6-7, PageID 760, 763, 766, 769, 772). Prior to the relevant period, Mr. Tilton observed that Plaintiff had an "inability to focus during [their] sessions," which prompted him to ask her how she was able to focus at work. (Doc. No. 6-2, PageID 54). Mr. Tilton's letters are silent as to whether Plaintiff was unable to focus during sessions that occurred within the relevant period, but he indicated that Plaintiff shared "her difficulties in concentration and focus" with him. (Doc. No. 6-6, PageID 663). Plaintiff alleges that the ALJ ignored the opinion evidence of Mr. Tilton as well as that of Attorney Konrad Kuczak, for whom Plaintiff provides contract paralegal services. However, the observations detailed in Mr. Kuczak's letter dated November 7, 2018, speak to Plaintiff's abilities at the time the letter was written, rather than during the relevant period. Likewise, as before, the ALJ reasonably focused on the objective medical evidence instead of Mr. Tilton's iterations of Plaintiff's subjective reports during the relevant period. For these reasons, substantial evidence supports the ALJ's assessment.

The last remaining area is the ability to adapt or manage oneself. Whether the assessment as to this area is supported by substantial evidence is a closer question. Therefore, it is important recognize the relevant abilities in this area that are to be considered. Relevant to assessing a claimant's ability to adapt and manage oneself are

11

considerations as to whether the individual can regulate emotions, control behavior, maintain well-being in a work setting, respond to demands, adapt to changes, manage psychologically based symptoms, distinguish between acceptable and unacceptable work performance, set realistic goals, make plans independently of others, maintain personal hygiene and attire appropriate to a work setting, and be aware of normal hazards and take appropriate precautions. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00E4.

Unlike the previous three areas, the assessment as to this area of mental functioning is devoid of meaningful consideration of Plaintiff's relevant abilities. Reasonably, the ALJ recognizes Plaintiff's "involuntary inpatient mental health treatment during the relevant period" and the fact that "she has since required ongoing outpatient treatment and medication management." (Doc. No. 6-2, PageID 141). However, there is an attempt to downplay the involuntary hospitalization by stating that Plaintiff "had been off of her medication at the time of her hospitalization," and that after treatment and medication management, she showed only "very mildly" depressed mood during one particular mental status examination. *Id.* The ALJ also stated that Plaintiff "testified that she can care for her own personal needs and she has since returned to work as a paralegal." *Id.*

Evidence relevant to this assessment was seemingly ignored. For instance, there are multiple records highlighting that Plaintiff presented with "limited hygiene" and as having a "mildly disheveled appearance." (Doc. No. 6-7, PageID 704, 763, 766). Mr. Tilton wrote that Plaintiff's "appearance was consistently disheveled." (Doc. No. 6-2, PageID 56). Records from Plaintiff's hospitalization indicate that her judgment and insight were limited at times. (Doc. No. 6-7, PageID 704, 724, 731). Similarly, Dr. Hott's

12

observations on mental status examinations indicate that Plaintiff's judgment and insight were usually "limited." *Id.* at 760, 763, 766, 769, 772. Mr. Tilton also wrote that Plaintiff's judgment and insight were "extremely limited." (Doc. No. 6-2, PageID 56).

Although Plaintiff presented as "very mildly" depressed on one occasion, on a previous visit, Dr. Hott described her as "more depressed" with "periodic suicidal ideation" and "lack of concern for own well being." (Doc. No. 6-7, PageID 766). Reflecting on the relevant period, Mr. Tilton found that Plaintiff "was extremely depressed, despite having been reestablished on Zoloft," and that "she was still seriously entertaining thoughts of suicide." (Doc. No. 6-2, PageID 56). Likewise, while hospitalization records indicate that Plaintiff made some progress during her involuntary admission, treatment notes also indicate that Plaintiff's decisions as to her care and treatment were questionable.

For instance, despite agreeing with providers that she remain hospitalized, Plaintiff refused to complete the form for voluntary admission supposedly on the advice of her lawyer. One of her providers wrote that "I have discussed [Plaintiff's] treatment plan with her consistently during her hospitalization and I thought that [she] was under the understanding that [she] would like to remain in the hospital until her symptoms are better controlled and her medications are titrated to the appropriate dosage prior to discharge." (Doc. No. 6-7, PageID 730). The provider further wrote that "her decisions are somewhat confusing to me and with her not able to understand what I am trying to explain to her, I am wondering if there are more issues at stake and possibly even suicidal ideations…" *Id.* After sharing these thoughts with Plaintiff, the provider indicated that Plaintiff "became irritable and agitated, accusing me of retaliating against her." *Id.* The provider also

13

questioned whether Plaintiff was truly advised by her lawyer against agreeing to voluntary admission, and wrote that her "social worker will get in contact with [her] lawyer to see if her behavior and decisions are indeed due to his recommendations" because "the most appropriate decision would be to sign the application for voluntary admission." *Id.* at 731.

Based on the foregoing, the undersigned finds that the ALJ's assessment as to Plaintiff's ability to adapt and manage oneself is not supported by substantial evidence. However, such a finding is of no consequence as Plaintiff clearly argues that she has a marked, rather than an extreme, limitation in this area. (Doc. No. 9, PageID 846) (Doc. No. 14, PageID 897-98). Paragraph B requires that Plaintiff show that she has an extreme limitation in one, or marked limitation in two, of the mental functioning areas.[3] Because the mild and moderate limitation assessments as to the other three areas are supported by substantial evidence, Plaintiff would not satisfy the Paragraph B criteria even if she were assessed with a marked limitation in adapting and managing oneself.

### 2. Paragraph C

Paragraph C of § 12.04 requires that the claimant show the "mental disorder in this listing category is 'serious and persistent;' that is, [the claimant has] a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the signs and symptoms of [the claimant's] mental disorder (see 12.00G2b); *and*

---

[3] A "marked limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Part 404, Subpart P, Appendix 1. An "extreme limitation" means a claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.*

> 2. Marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life (see 12.00G2c)."

20 C.F.R. Part 404, Subpart P, Appendix 1. As to these criteria, the entirety of the ALJ's assessment is limited to the following: "The undersigned has also considered whether the 'paragraph C' criteria were satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." (Doc. No. 6-2, PageID 142).

Plaintiff has a medically documented history of the existence of depression over a period of at least two years, and there is also evidence that suggests Plaintiff may satisfy the remaining criteria under Paragraph C. As to the first prong, the record reflects that Plaintiff received ongoing medical treatment and mental health therapy from Mr. Tilton and Dr. Hott during the relevant period. (Doc. No. 6-6, PageID 662) (Doc. No. 6-7, PageID 752). This fact is recognized at Step Three in assessing the criteria under Paragraph B when the ALJ acknowledges that, after her hospitalization, Plaintiff "required ongoing outpatient treatment and medication management." (Doc. No. 6-2, PageID 141). Treatment notes indicate that Plaintiff's signs and symptoms may have diminished through treatment and therapy. After several visits, Dr. Hott indicated in her treatment notes that Plaintiff was "calmer, only mildly depressed," and that Plaintiff was "not hopeless or suicidal or paranoid." (Doc. No. 6-7, PageID 758). This is in contrast to earlier treatment notes that indicated Plaintiff had "periodic suicidal ideation," was "more depressed," had "loss of hope" and presented with a "mildly disheveled appearance." *Id.* at 766.

In addition, there is evidence that relates to the second prong, marginal adjustment. To satisfy this criterion, "[w]e will consider that [the claimant has] achieved only marginal

adjustment when the evidence shows that changes or increased demands have led to exacerbation of [claimant's] symptoms and signs and to deterioration in [claimant's] functioning." 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00G2c. Accordingly, "because of the nature of [the claimant's] mental disorder, evidence may document episodes of deterioration that have required [the claimant] to be hospitalized or absent from work…" *Id.* In the present case, the record reflects that due to the nature of Plaintiff's mental disorder, she was involuntarily hospitalized for a suicide attempt during the relevant period. (Doc. No. 6-7, PageID 701-32). Plaintiff remained hospitalized for about a week as she "require[ed] inpatient treatment for stabilization and safety." *Id.* at 728. Treatment records indicated "multiple severe life stressors awaiting [Plaintiff] outside of the hospital." *Id.* at 731. During the course of her hospitalization, Plaintiff was prescribed medication, which she had previously taken for her depressive symptoms. *Id.* at 701.

It is not the responsibility of this Court to conclusively establish whether Plaintiff actually meets or medically equals § 12.04 of the Listings. However, the undersigned agrees with the Commissioner's concession that the evidence raises a substantial question as to whether Plaintiff could satisfy the criteria set forth in § 12.04. Therefore, error occurred to the extent that the ALJ failed to evaluate Plaintiff's severe impairments under this listing. The undersigned is not persuaded by the Commissioner's contention that such error was harmless. The cursory nature of the ALJ's assessment as to the criteria under Paragraph C lacked any explanation as to why Plaintiff failed to satisfy these criteria. Without such explanation, it is impossible for the undersigned to properly assess and determine whether the ALJ's assessment as to Paragraph C is supported by substantial

evidence. Moreover, because the Step Three determination lacks any mention of § 12.04, it is also not clear to this Court whether the consideration of the criteria under Paragraph C as to § 12.02, which did not apply in this case, actually involved the evidence that pertained to Plaintiff's related impairments. Accordingly, Plaintiff's asserted error is well-taken.

### B. Listing § 12.10

Plaintiff also appears to allege that error occurred as to the evaluation of her severe impairments under § 12.10. To meet or medically equal § 12.10, a claimant must demonstrate that she meets the criteria set forth in Paragraphs A and B. Under Paragraph A, a claimant must show "medical documentation of *both* of the following: (1) Qualitative deficits in verbal communicational, nonverbal communication, and social interaction; and (2) Significantly restricted, repetitive patterns of behavior, interests or activities. 20 C.F.R. Part 404, Subpart P, Appendix 1 (emphasis in original). The criteria under Paragraph B of § 12.10 are identical to the criteria under Paragraph B of § 12.02 and 12.04, which were discussed extensively above. As the undersigned previously explained, Plaintiff has not demonstrated that she meets the Paragraph B criteria. The assessments of a mild limitation in understand, remember, or apply information, moderate limitation in interact with others, and mild limitation in concentrate, persist, or maintain pace are supported by substantial evidence. And while the assessment as to Plaintiff's ability to adapt and manage oneself is not supported by substantial evidence, such an assessment has no lasting consequence as Plaintiff sets forth that she has a marked, rather than extreme limitation in this area, which would not satisfy the criteria under Paragraph B in light of the limitations assessed as to the other areas. Therefore, Plaintiff's argument as to § 12.10 is not well-taken.

17

### C. Listing § 12.15

Plaintiff also argues that error was committed at Step Three because there was no evaluation of § 12.15. However, this argument derives from Plaintiff's separate argument that the Appeals Council committed error when it declined to remand the matter for rehearing after Plaintiff presented additional evidence related to her claim for benefits, and her impairments that may qualify under § 12.15. Because the undersigned declines to address Plaintiff's remaining arguments beyond the listings and functional limitations set forth above, no finding is made as to § 12.15.

### VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). A remand under sentence four may result in the need for further proceedings or an

immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability decision is **VACATED**;

2. No finding is made as to whether Plaintiff Georgianna I. Parisi was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this decision; and

4. The case is terminated on the Court's docket.

April 20, 2021  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).